UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| RICHARD M. NAULT )<br>)<br>Plaintiff )<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. )<br>) | CIVIL ACTION NO. C-04-479-PB |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
REPLY TO UNITED STATES' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, Richard M. Nault, by and through his attorneys, Sheehan, Phinney, Bass + Green, P.A., and submits this Memorandum of Law in Support of His Reply to United States' Opposition to Plaintiff's Motion for Summary Judgment.

I.      **Introduction**

Plaintiff and Defendant still essentially agree on the relevant facts and law of this case. Plaintiff invested in various Partnerships engaging in farming operations. Affidavit of Richard M. Nault (hereinafter "Nault Aff."), Exhibit A ¶1.[1] The Internal Revenue Service ("IRS") investigated the Partnerships and assessed deficiencies. Id. ¶2. The Tax Court entered decisions according to a settlement submitted by the parties (though the legal effect of those decisions is disputed). See Tax Court Decisions, Exhibit B. Finally, Defendant agrees that if the loss is deductible, it is an ordinary loss. See Defendant's Memorandum of Law In Support of the United States' Motion for Summary Judgment (hereinafter "Defendant's Motion") at 5.

---
[1] All references to Exhibits A-F are to exhibits attached to Plaintiff's Motion for Summary Judgment. Exhibit G is attached to Plaintiff's Objection to Defendant's Motion for Summary Judgment.

## II. The Holding Of The Tax Court Is A Matter Of Legal Interpretation For The Court To Decide.

Defendant suggests that Plaintiff has admitted, in his pleadings or his interrogatory responses, that the Tax Court "found" that the Partnerships lacked economic substance. Such a legal opinion is not an issue of fact that can be admitted by a party. See New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 24-5 (4th Cir. 1963). Neither Plaintiff's nor Defendant's characterization of the Tax Court decisions bind the parties, rather the effect of the Tax Court decisions is a matter of legal interpretation for the Court. Id. The Court has the decisions before it and can make its own analysis of the holding of the cases. As such, Plaintiff's initial characterization of the Tax Court decisions is irrelevant.

## III. The Terms Of The Settlement Are Unambiguous, And The Court Should Disregard Defendant's Post Hoc Attempt To Introduce Its Subjective State Mind.

The parties settled the dispute over the Partnership items and the Tax Court entered decisions accordingly. See Tax Court Decisions and Motion for Entry of Decisions Pursuant to Rule 248(b), Exhibits B and G. Now, Defendant offers the affidavit of Margaret Hebert, an attorney for the IRS, purportedly to explain the IRS' subjective reasons for agreeing to the terms of the settlements, implying that the IRS' reasons for entering the settlements are relevant in interpreting the settlements and the Tax Court decisions. The Defendant's unexpressed subjective intent in agreeing to the terms of the settlements is irrelevant and inadmissible in interpreting the Tax Court decisions. Cf. Marketing and Management Information, Inc. v. United States. 62 Fed.Cl. 126, 133 (2004) ("In any event, even if it was the subjective intent of the government that the absence of such a clause would insulate it from liability in the event of a breach, it was not the intent of the plaintiff, and we must interpret the contract without regard to the subjective unexpressed intent of one of the parties.") (quoatation omitted); Royer Foundation

& Machine Co. v. New Hampshire Grey Iron, Inc., 118 N.H. 649, 651 (1978) ("The evidence sought to be introduced by [Plaintiff] does not show a meaning of the writing, but an intent wholly unexpressed in the writing."); 11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30:6, at 80-83 (4th ed. 1999) ("When a contract is unambiguous, the court must … give effect to the contract as written, the duty of the court being to declare the meaning of what is written in the instrument, now what was intended to be written.") (emphasis added).

A party objecting to summary judgment must submit an affidavit that provides "such facts as would be admissible in evidence." FED. R. CIV. PRO. 56(e). Ms. Hebert's affidavit is inadmissible extrinsic evidence and the Court should disregard her explanation of the IRS' unexpressed reasons for agreeing to the terms of the settlement. The terms of the settlement, described in attachment C as part of Exhibit G, unambiguously express the terms of the settlement. Those unambiguous terms, now integrated into the Tax Court decisions, are all that matter in interpreting the settlement terms and the Tax Court decisions. As such, Plaintiff has failed to offer admissible facts to defeat summary judgment on this basis.

**IV.    Even If The Court Does Not Entirely Disregard Ms. Hebert's Affidavit, Her Assertion That The Settlement Is The "Economic Equivalent" Of Treating The Partnerships As Shams Is Plainly Unsupported and Incorrect.**

Defendant suggests that the structure of the settlement, allowing the Partners many deductions, recognizing the Partners' future ordinary income (on which the Partners had, of course, already paid tax), and allowing the Partners to claim investment tax credits, was merely an administrative convenience that reached the same economic result as if the Partnerships had been entirely disregarded. Ms. Hebert provides no shred of information or analysis to justify such a claim. Moreover, such a proposition is absurd on its face.

The settlement disallowed a fixed percentage of the Partnerships' deductions taken in the first year and purportedly included an adjustment for the Partnerships' later income. The settlements left unchallenged the Partnerships' investment tax credits. These adjustments, however, were all made at the Partnership level and therefore applied globally to all Partners, failing to take into account any individual aspects of a Partner's returns, such as:

- the Partner's tax bracket for each year;
- whether the Partner was subject to the Alternative Minimum Tax; and
- whether the Partner had other gains or losses that were offset by later income or deductions.

Importantly, the settlement also failed to take into account various offsetting interest provisions that would have been applicable depending on a Partner's individual returns. This was particularly damaging to the Partners because the IRS imposed a punitive interest rate and the settlement, which was delayed by actions of the IRS for over a decade, imposed the adjustment only in the first year of the Partnerships.

Although it would be very difficult now to precisely recreate how the result would have been different if Plaintiff had been allowed to adjust all his affected returns (as would have happened if the IRS proved at trial that the Partnerships generally lacked economic substance), it is plainly clear from consideration of these issues that the global, one-size-fits-all settlement could not possibly reach the economic equivalent at the Partner level of disregarding the Partnerships. [2]

### V.   The Terms Of The Settlement Do Not Preclude Plaintiff From Taking An Ordinary Loss For The Loss Of His Partnership Interests.

---

[2] At no time during the settlement negotiations or these proceedings has the IRS or the Department of Justice ever provided Plaintiff of the calculation of the IRS-imposed adjustment. Even Ms. Hebert's inadmissible affidavit fails to demonstrate any such calculation. To the extent that the Court considers Ms. Hebert's affidavit claiming the settlement reached the economic equivalent of entirely disregarding the Partnerships, the Defendant should be required to prove such equivalence.

4

The Defendant admits that a Partnership that lacks economic substance should be entirely disregarded. Defendant admits that its interpretation of the settlement is inconsistent with its position that the Tax Court "found" that the Partnerships lacked economic substance. See United States' Opposition to Plaintiff's Motion for Summary Judgment (hereinafter "Defendant's Opposition"), at 5. The Defendant admits that it did not dot all the i's and cross all the t's. Id. at 6. The Defendant admits that it should have done something else if the Partnerships were, in fact, pure shams. See id. at 7. But, it did not do something else, and it is bound by the expressed terms of the settlement that actually recognized the legitimate existence of the Partnerships.[3]

The terms of the parties' 2001 settlement are unambiguous and comprehensive. For example, one provision of the agreement specifically precludes the Partners from filing adjustments to returns relating to the income that the IRS recognized in the settlement. Given the Defendant's position, it is noteworthy that the parties included no such similar prohibition on Partners taking ordinary losses on the loss of their Partnership interests. In fact, such a loss was clearly envisioned by the parties both because it is not prohibited by the settlement terms and because the IRS acknowledged that the Partners would have a taxable disposition on a sale or exchange of their interests. See Exhibits D and E. Defendant does not even attempt to explain away why the IRS told the Partners that a sale or exchange of their Partnership interests would create capital gains or losses. See Exhibits D and E. Such an instruction from the IRS is clearly inconsistent with its current position. In all likelihood, this is because all involved recognized that the actual treatment of the Partnerships in the settlement required the inclusion of ordinary

---

[3] The Defendant notes that Plaintiff is not asserting or trying to actually prove the Partnerships in fact had economic substance. See Defendant's Opposition, at 4 n.3. That is true. This dispute does not turn on whether the Partnerships actually had economic substance, and the parties are not asking the Court to make that inquiry. Rather, the question is whether the IRS can actually treat the Partnerships as having economic substance, and tax the Partners accordingly, and later turn around and deny the Partners' losses on their investments. Such inconsistent treatment is the basis for Plaintiff's complaint.

income (on which the Partners had already paid taxes), included tax credits, and included some deductions – all recognizing the legitimate existence of the Partnerships. At no point in the actual terms of the settlement does it say that the Partnerships lacked economic substance. See Attachment C to Exhibit G. Those words only appear in the IRS' Motion for Entry of Decisions Pursuant to Rule 248(b), see Exhibit G, and subsequently the Tax Court decisions, see Exhibit B. It is clear that disregarding the basis generated by the Plaintiff's legitimate investments as the Defendant now attempts to do was simply not part of the settlement. Plaintiff made all the adjustments required by the settlements and paid his taxes. Now he is merely consistently applying the tax laws, which provide him an ordinary loss because he did not sell or exchange his interests, as initially envisioned by the IRS.

### VI. Plaintiff Was Correct In Filing Amended Returns Seeking A Refund For The Entire Adjustment.

Defendant complains that Plaintiff did not provide evidence of his basis before the adjustment calculated by the IRS and that Plaintiff must have assumed his basis was zero before the adjustment. In its protest, Defendant overlooks the fact that Plaintiff was amending his prior returns. The Partnerships terminated in 1995, 1998, and 2000. The settlement did not occur until 2001. Thus, Plaintiff had already filed all of his tax returns for the years in which the Partnerships ended. Those returns already reflect a complete reconciliation of Plaintiff's bases in the Partnerships, including all investments, deductions, income, and credits. The proper method of amending such a return is to file an amended return covering only the changes.

For example, if Plaintiff purchased IBM stock in 1980 with a basis of $1000 and sold it in 1982 for $2000 he would report and pay taxes on $1000 of gain in 1982. If in 1984 the IRS adjusted his 1980 basis in the stock to $1500, Plaintiff would file an amended 1982 return to give effect to the $500 change in basis. In this case, Plaintiff is not claiming that his bases were zero

6

before the adjustments, he is amending his returns based on the adjustments required by the settlement. He had already reconciled his bases in the terminated Partnerships on his originally filed tax returns. The subsequent IRS adjustments to the initial-year return for each Partnership, mandated a reconciling adjustment in Plaintiff's Partnership bases in the year of disposition. Thus, Plaintiff was correct in his refund claims because the change caused by the IRS adjustment to Partnership income must flow through the taxpayer's basis in accordance with Section 705 of the Internal Revenue Code.

### VII. Plaintiff's Partnership Interests Became Worthless.

Plaintiff's bases in the Partnerships arose from his initial investment adjusted by losses and income generated by the Partnerships, which the IRS required Plaintiff to recognize.[4] These interests became worthless, as clearly identified when the Partnerships filed their final tax returns and Plaintiff received nothing. Plaintiff did not receive any income, nor was he relieved of any liabilities. See Plaintiff's Final Year K1 Forms, attached hereto as Exhibit H; Partnership 1065 Forms, attached hereto as Exhibit I.[5] Plaintiff's K1s show that he received nothing for his interests in three of the Partnerships, Agri-Cal Venture Associates, Agri-Venture II, and U.S. Farm Partners 86, because any income, including forgiveness of indebtedness income, would have appeared on his K1. The Forms 1065 are the final Partnership returns for Coachella-85 and Coachella Fruit Growers. These Forms 1065 also show that the Partners received no income or relief from liability. Therefore it is clear that he never received a distribution, nor was forgiven any liabilities for any of the Partnerships. The termination of the Partnerships is clearly an

---

[4] It is important to note that the Partnerships made a significant amount of money, on which the Partners paid taxes, after the early loss years. This income is evident in the fact that after the deductions disallowed by the IRS, Plaintiff's bases were larger than his initial investments. The only way this increase could happen (absent further investment by Plaintiff) is if the net adjustment to Plaintiff's returns reflected more recognized income than disallowed deductions.

[5] Neither Plaintiff, his accountants, the Partnerships' accountants, nor Defendant has a copy of Plaintiff's final K1 for Coachella-85 or the Coachella-85's 1065 return. Plaintiff has submitted a Request for Transcript with the IRS and will supplement his pleading as soon as it is received.

identifiable event on which such a determination of worthlessness can be made. See <u>Echols v. Commissioner</u>, 950 F.2d 209, 213 (5th Cir. 1991). Plaintiff's interests also clearly were subjectively worthless to him at that time. See <u>Exhibit A</u> ¶5.

### VIII. **<u>Conclusion</u>**

The IRS claimed the Partnerships lacked economic substance. However, it settled on a different basis expressed clearly in the terms of the settlement, which never denied the legitimate existence of the Partnerships. The Defendant suggests that it merely took a shortcut that should now be given the same effect as if it had done things properly. In order to do so, the Defendant asks this Court to: (a) rewrite a decision of the Tax Court; (b) reinterpret the unambiguous terms of the parties' settlement; and (c) make new law to punish the Plaintiff by denying him a deduction for the loss of his investments. Despite having actually treated the Partnerships as if they had substance in the settlement, and requiring Plaintiff to pay taxes on that treatment, Defendant asks this Court to disregard Plaintiff's interests. Plaintiff asks this Court to recognize the reality of the parties' settlement and allow Plaintiff a deduction for the loss of his investments.

Respectfully submitted,

**RICHARD M. NAULT**

By His Attorneys,

**SHEEHAN PHINNEY BASS & GREEN, PROFESSIONAL ASSOCIATION**

Dated: January 20, 2006         By: __*/s/ Robert R. Lucic*__
                                Robert R. Lucic (No. 9062)
                                Peter T. Beach (No. 7861)
                                Michael G. Valentine (No. 16506)

                                      1000 Elm Street, P.O. Box 3701
                                      Manchester, NH  03105-3701
                                      (603) 627-8188
                                      rlucic@sheehan.com
                                      pbeach@sheehan.com
                                      mvalentine@sheehan.com

## **CERTIFICATION**

I hereby certify that a copy of the foregoing Memorandum was served on the following persons on this date and in the manner specified herein:

Via ECF:

    Stephen J. Turanchik
    Trial Attorney, Tax Division
    U.S. Department of Justice
    P.O. Box 55
    Ben Franklin Station
    Washington, D.C. 20044
    stephen.j.turanchik@usdoj.gov

Via First Class Mail:

    Thomas R. Colantuono
    United States Attorney
    55 Pleasant Street
    Concord, NH  03301


                                                */s/  Robert R. Lucic*
                                                Robert R. Lucic